**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRYSTAL FARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:24-cv-00894-SEP |
| | ) | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff's Motion for Summary Judgment, Doc. [47], and Defendant Hartford Life and Accident Insurance Company's Motion for Judgment on the Record, Doc. [48]. For the reasons set forth below, Plaintiff's motion is granted and Defendant's motion is denied as moot.

**FACTS AND BACKGROUND**[1]

Plaintiff Krystal Farley used to work as a nurse at St. Louis Anthem. Doc. [54-1] ¶ 7. Plaintiff last worked on February 25, 2020. Doc. [54-1] ¶ 8. In February 2020, Plaintiff was admitted to the hospital for diabetic ketoacidosis, and subsequently developed acute respiratory distress, was put on a ventilator, failed to wean from the ventilator, received a tracheostomy, developed ventilator-acquired pneumonia/bacteremia, was diagnosed with respiratory failure and fluid in her lungs, and had part of her left lung removed. Doc. [54-1] ¶¶ 9-10. Plaintiff was discharged from the hospital on May 15, 2020. Doc. [54-1] ¶ 10. On May 26 and 27, 2020, Plaintiff visited the emergency room complaining of shortness of breath and declined to be admitted to the hospital against doctors' recommendations. Doc. [54-1] ¶ 16. Plaintiff reports that she was hospitalized for pneumonia in January 2022, though Defendant notes that the Administrative Record does not contain support for that claim. Doc. [54-1] ¶ 13. By April 2022, Plaintiff no longer needed supplemental oxygen. Doc. [54-1] ¶ 11. In May 2022, Plaintiff

[1] The facts are drawn from the Plaintiff's Statement of Uncontroverted Material Facts, Doc. [47-2] and Defendant's response, Doc. [54-1]. Those documents also refer to the Administrative Record, filed under seal at Docs. [29], [30], [31], [32].

completed a pulmonary stress test wherein she walked 840 feet in six minutes but developed shortness of breath. Doc. [54-1] ¶¶ 21, 23.

Plaintiff claims she "cannot engage in almost any physical activity," which Defendant contests, alleging that the record demonstrates Plaintiff engaging in physical activities, including caring for her elderly mother and driving. Doc. [54-1] ¶ 18. Plaintiff cites a January 11, 2023, letter from one of her doctors stating that she "will have a permanent impairment" relating to chronic lung disease, requires respiratory treatments at least four times per day which "is not expected to improve" and "has limitations to her exertional capability. I believe she cannot exert herself greater than fifty feet without being limited." Doc. [30] at 250. Defendants contest that assessment, citing notes from a psychiatric evaluation wherein Plaintiff "report[ed] that she moved out of her mother's home (had been taking care of mother at mother's home for a while)," Doc. [31] at 247, and Defendant's internal notes reporting that on a phone call, Plaintiff said that, if necessary, she will drive and get her medical release forms herself. Doc. [29] at 216.

As an employee, Plaintiff was covered by St. Louis Anthem's Long-Term Disability Plan (LTD Plan). Doc. [49] at 5. Plaintiff was initially granted LTD benefits for only the 12-day period from August 28, 2020, through September 9, 2020. Doc. [54-1] ¶ 32; Doc. [29] at 296. After her first appeal, Plaintiff was granted LTD benefits for two years—through August 28, 2022. Doc. [54-1] ¶¶ 24, 32, 36, 40. Separately, Plaintiff applied for and was awarded Social Security Disability Insurance (SSDI) benefits beginning from April 21, 2021, the determined date of Plaintiff's disability onset. Doc. [54-1] ¶ 35; Doc. [30] at 288. Defendant then denied Plaintiff's claim for LTD benefits from August 28, 2022, onward. Doc. [54-1] ¶ 41. Plaintiff appealed the denial and did not receive a response within the time limit prescribed by ERISA regulations and the Plan documents. Plaintiff alleges that Defendant's denial of LTD benefits violates ERISA. Defendant contests the timeliness of its response and the standard of review.

## I. <u>Defendant's Long Term Disability Plan</u>

Plaintiff is a participant in St. Louis Anthem's Long-Term Disability Plan (LTD Plan). Doc. [49] at 5. The LTD Plan is governed by the Employe Retirement and Security Act (ERISA). *See* 29 U.S.C. § 1003. The Plan has granted Defendant Hartford Life and Accident Insurance Company "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy, to the extent permitted by applicable state law." Doc. [29] at 94; Doc. [54-1] ¶ 1. The LTD Plan provides benefits to St.

Louis Anthem employees who qualify as disabled. Defendant requires participants to submit adequate Proof of Loss demonstrating disability. Doc. [29] at 47. The LTD Plan defines "disabled" as:

> **Disability** or **Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 2 year(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) After that, Any Occupation (AR0051)

Doc. [47-2] ¶ 4. Under the policy, "Plaintiff is entitled to LTD benefits if she is 'disabled' throughout and beyond the Elimination Period of the first 180 days of disability." Doc. [49] at 5-6. "A claimant is 'disabled' during the first 24 months if she is 'prevented from performing one or more of the Essential Duties' of 'Your Occupation.'" Doc. [49] at 6; AR50-54. Thereafter, the standard to continue to receive LTD benefits is raised such that "Plaintiff is 'disabled' if she is 'prevented from performing one or more of the Essential Duties' of 'Any Occupation.'" Doc. [49] at 6; AR50-54. The Policy defines "Your Occupation" as "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location." Doc. [47-2] ¶ 5; Doc. [29] at 26. And the Policy defines "Any Occupation" as "any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of: . . . 1) the product of Your Indexed Pre-disability Earnings and the Initial Benefit Period Percentage; or 2) the Maximum Monthly Benefit." Doc. [47-2] ¶ 6; Doc. [29] at 50-51. Although Plaintiff qualified as disabled under the "Your Occupation" standard that applied for the first twenty-four months, Defendant determined that she was not disabled under the higher "Any Occupation" standard that took effect on August 28, 2022. Doc. [49] at 6; Doc. [54-1] at 12. That determination is at issue in this case.

## II. Defendant's Initial 12-Day Grant and Denial of Benefits Thereafter

Defendant sent Plaintiff a letter dated April 20, 2022, granting Plaintiff LTD benefits from August 28, 2020, until September 9, 2020, stating that she does not meet the policy definition of Disability beyond September 9, 2020. To make that determination, Defendant obtained an independent review of Plaintiff's medical records from Dr. Mattew Chan, an independent board-certified physician in Preventative and Occupational Medicine. Doc. [54-1]

¶ 27. Dr. Chan submitted his peer review report on March 29, 2022, wherein he reviewed medical records from March 21, 2020, through December 1, 2021, from dozens of providers. Doc. [31] at 240-41. On page 2 and 5 of his report, he wrote "[t]he claimant is a 50-year-old female with a medical history significant for history of loculated MRSA pneumonia, pyothorax with fistula, candidemia, chronic respiratory failure with hypoxia, s/p left partial lobectomy and decortication (3/23/20), dysphagia, chronic diarrhea, solitary lung nodule, polyarthralgia, insulin dependent type I diabetes mellitus, and hypothyroidism." *Id.* at 241, 244.

According to Dr. Chan's report, "due to lack of supporting data, no restrictions or limitations can be opined," and "there are no limitations in the number of hours per day and days per week the claimant is capable of working from 9/10/2020 to present and beyond." Doc. [54-1] ¶ 28; Doc. [41] at 245. Per Defendant, Dr. Chan saw "no records with objective findings for any functional limitations beyond September 10, 2020," which was the last known visit date with Dr. Gary Goldstein, whom Dr. Chan repeatedly contacted seeking information about Plaintiff's condition beyond September 10, 2020. Doc. [54-1] ¶ 28. In Plaintiff's view, "Dr. Chan's report contained only conclusory statements with no analysis whatsoever and with no analysis as to why her treating doctors' opinions were wrong." Doc. [54-1] ¶ 30. Defendant counters that that characterization is unsupported by the record and that Dr. Chan's report speaks for itself. *Id.* According to Defendant, Dr. Chan "opines objective evidence to support continuous impairment is lacking." Doc. [54-1] ¶ 29; Doc. [29] at 185. Accordingly, in the April 20, 2022, letter, Defendant explained that LTD payments were not payable to Plaintiff as of September 10, 2020. Doc. [54-1] ¶ 32; Doc. [29] at 296.

## III. <u>Dr. Chan's Addendum Report</u>

Later, Dr. Goldstein provided Defendant updated records from his April 1, 2022, office visit with Plaintiff. Doc. [54-1] ¶ 28. With the new information, Dr. Chan prepared an addendum report dated April 15, 2022. Doc. [54-1] ¶ 28; Doc. [31] at 116-17. The addendum report notes that on April 1, 2022, during a visit to an unspecified provider in follow-up to a January 2022 hospitalization for pneumonia and February 2022 illness, Plaintiff tested positive for COVID-19. Doc. [31] at 116. Further, Dr. Chan reports, a pulmonary function test "revealed moderate to severely reduced FVS and FEV1," and Plaintiff "had a severe diffusion defect." *Id.* In the addendum report, Dr. Chan opined that Plaintiff does have physical limitations that impact her ability to work, but that Plaintiff had no restrictions on sitting, can stand "[f]requently, 60

minutes at a time, for up to 5 hours per day" and can walk "[f]requently, 30 minutes at a time, for up to 4 hours per day." *Id.* Dr. Chan recommended reassessment on or around July 12, 2022. Doc. [31] at 117.

**IV. Plaintiff's First Appeal**

Plaintiff retained counsel and, in a letter dated March 17, 2023, appealed the denial of benefits. Doc. [54-1] ¶ 36. By this time, Plaintiff had been approved for SSDI benefits, which she learned of in a letter dated January 22, 2023. Doc. [54-1] ¶ 35; AR672. The Social Security Administration determined Plaintiff's date of disability onset to be April 21, 2021. Doc. [54-1] ¶ 35; Doc. [30] at 288. With her appeal, Plaintiff provided 146 pages of updated medical records, statements documenting her condition from her former supervisor and her doctor, and her SSDI benefits award letter. Doc. [54-1] ¶ 36. In a statement included with her appeal, Dr. Goldstein wrote that she "has extensive lung disease to the left side related to the previous surgery that will not resolve. She will have a permanent impairment and has between moderately severe and a moderate ventilatory abnormality." Doc. [54-1] ¶ 37. Dr. Goldstein also wrote, "I believe she cannot exert herself greater than fifty feet without being limited. She is at risk of repetitive pneumonias and due to her chronic lung disease would be at risk of severe infections related to viruses or bacteria that may be in a medical environment." *Id.* Defendant characterizes Dr. Goldstein's statement as misleading because he also wrote that Plaintiff weaned off supplemental oxygen as of April 2022 and because a May 2022 pulmonary stress test indicated that Plaintiff walked 840 feet. *Id.*; Doc. [54-1] ¶ 33. In a one-page letter dated April 27, 2023, Defendant reversed its denial of Plaintiff's claim for LTD benefits during the Policy's "Own Occupation" period. *Id.* ¶ 40. Defendant wrote that "[f]ollowing a review of the information in your client's claim file," that Defendant found that Plaintiff had met the policy definition for disability during that period. *Id.* ¶ 40.

**V. Defendant's Initial Denial of Benefits Under the "Any Occupation" Standard**

In another letter dated May 30, 2023, Defendant denied Plaintiff's claim for LTD benefits during the "Any Occupation" period, finding that Plaintiff was not entitled to disability benefits from August 28, 2022, onward. Doc. [54-1] ¶ 41; Doc. [29-1] at 286-92. The letter states: "We based our decision to terminate your claim on policy language. All the documents contained in your file were viewed as a whole." *Id.* at 288-89. It lists 19 categories of documents reviewed by Defendant, including (1) Dr. Goldstein's January 11, 2023, letter stating that Plaintiff no

longer required supplemental oxygen as of May 2022; (2) a December 2022 CT scan that "revealed bronchiectasis with extensive mucous plugging and atelectasis in the right lower lobe"; and (3) pulmonary function testing that "demonstrated a moderate impairment." *Id.* at 289.

Defendant's denial rested heavily on an independent medical review performed by Dr. Rafid Fadul, which set out restrictions and limitations in light of Plaintiff's condition. Dr. Fadul found Plaintiff "capable of sitting without restriction; and both standing and walking occasionally for up to 20 minutes at a time, for up to 1 hour per day." *Id.* at 290. Using Dr. Fadul's restrictions, "a Vocational Rehabilitation Clinical Case Manager performed an Employability Analysis' which showed occupations within Plaintiff's physical capabilities that met the Policy's pay requirements, including: Claims Clerk II; Rehabilitation Clerk; Dispatcher, Street Department; Checker II. *Id.* at 290. Accordingly, Defendant concluded that Plaintiff was not "prevented from performing the essential duties of Any Occupation." *Id.* Defendant determined that Plaintiff did not meet the policy definition of disabled as of August 28, 2022, and that her LTD benefits would terminate on that date. *Id.* Defendant provided an Employability Analysis Report supporting its decision, opining that given the restrictions and limitations provided by Dr. Fadul, Plaintiff could perform several occupations with "minimum training." Doc. [54-1] ¶ 42.

Finally, the May 30, 2023, letter instructed Plaintiff that she could appeal Defendant's decision by sending an appeal letter by January 6, 2024, to:

Claim Appeal Unit
The Hartford
P.O. Box 14087
Lexington, KY 40512-4087
Fax: 855-339-7249

Doc. [29] at 291. The letter, which was signed by Matthew Fox, Senior Ability Analyst at Harford Life and Accident Insurance Co., requested that any appeal "[p]lease include your printed or typed full name, Policyholder, and at least the last four digits of your Social Security Number." *Id.* at 291-92.

## VI. <u>Plaintiff's Second Appeal</u>

### A. Plaintiff faxed her appeal on August 30, 2023.

On August 30, 2023, Plaintiff appealed the denial of her claim. Doc. [54-1] ¶ 49; Doc. [30] at 65. At the top of the appeal letter in the administrative record, a header states that an inbound fax was successfully received on August 30, 2023, at fax number (855) 339-7249. Doc.

[30] at 65. The letter begins with the date and a notice that it was sent via facsimile to the fax number noted above. *Id.* Further, the letter lists the address "The Harford, P.O. Box 14302, Lexington KY 40512-4302," Policy Number GLT883266, Policy Holder St. Louis Altenheim, claimant Krystal Farley, Insured ID 9005761031, Claim Number 17168379, and the last four digits of Plaintiff's social security number. Doc. [30] at 65.

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| August 30, 2023 at 6:26:19 PM EDT | | 685 | 15 | Received |

From: Robert McKennon Fax: 19493855165 To: Fax: (855) 339-7249 Page: 1 of 15 08/30/2023 3:14 PM

MCKENNON LAW GROUP PC
20321 SW BIRCH ST. SUITE 200, NEWPORT BEACH CA 92660

Nicholas A. West
Tel (949) 387-9595
Fax (949) 385-5165
nw@mckennonlawgroup.com

Our File No.
22.10783.001

August 30, 2023

***VIA FACSIMILE***
***Fax No.: (855) 339-7249***

***ATTN: Matthew Fox***
The Hartford
P.O. Box 14302
Lexington, KY 40512-4302

| Re: | Policy No.: | GLT883266 |
|---|---|---|
| | Policy Holder: | St. Louis Altenheim |
| | Claimant: | Krystal Farley |
| | Insured ID.: | 9005761031 |
| | Claim No.: | 17168379 |
| | SSN: | xxx-xx-0664 |

Both the Plan and ERISA regulations require Defendant to respond to any disability appeal within 45 days. 29 C.F.R. § 2560.503-1(i)(1)(i); Doc. [29] at 97. Forty-five days after August 30, 2023, is October 14, 2023. In a letter dated November 3, 2023, Plaintiff wrote Defendant to explain that, because it had failed to respond to her appeal in a timely manner, the claim was now deemed denied, and the administrative record was closed as of October 14, 2023. Doc. [54-1] ¶ 51; AR446. In a letter dated November 22, 2023, an appeal specialist at Defendant wrote: "We apologies [sic] regarding the delay of handling Ms. Farley's appeal which was received on 8/30/2023. We are proceeding with the appeal review and will provide you with a decision as soon as possible." Doc. [29] at 283. In another letter dated November 27, 2023, the

same appeal specialist wrote: "As previously noted, we apologize regarding the delay of handling Ms. Farley's appeal which was received on 8/30/2023 and will make a decision as soon as possible." Doc. [29] at 281.[2] Defendant's internal notes in Plaintiff's file include the following notation: "APPEAL: Letter dated and received on 8/30/23 by atty Nicholas A. West." Doc. [29] at 124.

Defendant now argues that it was not "in receipt of Plaintiff's appeal [until] early November 2023," Doc. [49] at 22, because Plaintiff mailed her appeal to the wrong address, and her counsel included an incorrect claim number in the faxed copy, which delayed its arrival in the appropriate file. Doc. [54-1] ¶ 51.

On December 6, 2023, Hartford rendered a decision on the appeal, upholding its prior decision. Doc. [54-1] ¶ 51. Defendant claims that the decision was timely because it was issued within a month of Defendant being in receipt of Plaintiff's appeal. Doc. [49] at 22. Plaintiff contends that the claim was deemed denied on October 14, 2023, and that the administrative record therefore closed on that date. Doc. [55] at 7.

**B. In her appeal, Plaintiff challenges Defendant's employability analysis.**

Plaintiff challenges the denial on the basis that "Defendant relied on a highly flawed vocational report generated by Cathleen Crovo" concluding that Plaintiff could perform the following occupations: Claims Clerk II, Rehabilitation Clerk, Dispatcher of Street Department, and Checker II. Doc. [54-1] ¶ 42. Plaintiff's own vocational expert, Phillip D. Sidlow, prepared an eight-page report analyzing Ms. Crovo's determination. Doc. [54-1] ¶ 43. Mr. Sidlow's report points to the definition of Sedentary Work in the Dictionary of Occupational Titles (DOT), which includes, as relevant here, "[o]ccasionally: activity or condition exists up to 1/3 of the time" and states "[j]obs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." Doc. [54-1] ¶ 44. In other words, according to Plaintiff, a job is sedentary if walking and standing are required no more than 1/3 of an eight-hour workday. *Id.* Mr. Sidlow's report explains that Plaintiff "cannot meet the exertional requirement for Sedentary Work" because even according to Dr. Fadul, Plaintiff can stand and walk for only up to one hour per day, which is less than the "between two and three hours"

[2] At the bottom of the November 27, 2023, letter, the appeal specialist wrote that Plaintiff's attorney could send additional information in one of three ways: "[1] email any information to email any information to informationupload@thehartford.com, [2] fax it to 1-855-339-7249 or [3] mail it to: The Hartford PO Box 14087 Lexington, KY 40512-4087." *Id.*

required for Sedentary Work. Doc. [54-1] ¶ 45. And because Plaintiff cannot meet the exertional requirements for Sedentary Work, she cannot meet the exertional requirements for any other work, either. *Id.* Defendant counters that Plaintiff's argument "contradicts the Eighth Circuit's recognized definition of sedentary work for ERISA LTD claims." Doc. [54-1] ¶ 44. Quoting *Pralutsky v. Metro. Life Ins. Co.*, 316 F. Supp. 2d 840, 853 n.9 (D. Minn. 2004), *rev'd*, 435 F.3d 833 (8th Cir. 2006), Defendant asserts that "sedentary work generally involves up to two hours of standing or walking" during an eight-hour workday." *Id.*

Mr. Sidlow's report also rejects the potential occupations identified in Ms. Crovo's report, explaining that they "all require career change and significant retraining," and that the salaries are insufficiently low to satisfy the Policy's requirements. Doc. [54-1] ¶ 47. In Mr. Sidlow's opinion, because Plaintiff cannot work in any occupation, she is disabled under the "Any Occupation" standard and entitled to LTD benefits from Defendant.

Plaintiff filed this lawsuit on June 27, 2024, claiming that Defendant's denial violated ERISA. Doc. [1]. Both parties now ask for judgment as a matter of law. *See* Docs. [47], [48].

## Legal Standard

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation marks omitted). The non-movant must then "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson*, 477 U.S. at 250).

## DISCUSSION

Plaintiff is entitled to summary judgment. Because Defendant failed to issue its decision within the bounds of its discretion under the amended ERISA regulations, the Court reviews its denial of benefits de novo. Defendant denied benefits in violation of the plan documents, ERISA, and the findings of its own reviewing doctor.

## I. **The Court reviews the denial of benefits de novo.**

ERISA allows a participant in an ERISA-regulated plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "The district court's review of plan determinations is *de novo*, unless the plan grants discretionary authority to the plan administrator 'to determine eligibility for benefits or to construe the terms of the plan.'" *Johnson v. U.S. Bancorp Broad–Based Change in Control Severance Pay Program,* 424 F.3d 734, 738 (8th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). When a decision is made pursuant to discretionary authority granted by a plan, "a court should review the plan administrator's decision only for abuse of discretion." *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 959 (8th Cir. 2020) (quoting *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 899 (8th Cir. 1996)). But "[d]ecisions made outside the boundaries of conferred discretion are not exercises of discretion." *Cogdell v. Reliance Standard Life Ins. Co.*, 169 F.4th 238, 254–55 (4th Cir. 2026) (quoting *Jebian v. Hewlett Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003)).

### A. Prior to 2016, ERISA regulations mandated only "reasonable claims procedures."

In 2002, ERISA regulations were "radically overhauled" to flesh out the boundaries of conferred discretion. *See Cogdell*, 169 F.4th at 248 (quoting *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1002 (7th Cir. 2019)). In particular, the new regulation addressed a plan administrator's "[f]ailure to establish and follow reasonable claims procedures," and required plans to "provide a reasonable claims procedure." 29 C.F.R. § 2560.503-1(l) (2002). The new subsection (l) provided:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*Id.* Under the new regulation, a plan's failure to "provide a reasonable claims procedure" entitles the claimant to sue under section 502(a). 29 U.S.C. § 1132(1).

Courts of appeal have taken different approaches to missed deadlines under the 2002 regulations. Some have required only substantial compliance with claims procedures, including deadlines, in order to escape de novo review. *See, e.g., LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798-99 (10th Cir. 2010) (administrator's decision is subject to de novo review if it was issued "substantially outside the time period within which the Plan vested [the administrator] with discretion to interpret and apply the Plan"); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006) ("To decide whether there is substantial compliance, this Court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances."). The Second Circuit has eschewed the "substantial compliance" standard and held that a missed deadline triggers de novo review. *See Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005) ("a 'deemed denied' claim"—a claim that, under a prior iteration of the ERISA regulations, was denied by operation of law if the administrator failed to issue a decision by the prescribed deadline in the regulations—"is entitled to de novo review"). The Seventh Circuit has held that, even if substantial compliance is sufficient for other claims procedures, strict compliance is required with deadlines in particular. *See Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998,

1000 (7th Cir. 2019) ("the 'substantial compliance' exception does not apply to blown deadlines. . . a deadline is a bright line. Because [Defendant] violated a hard-and-fast obligation, its late decision to deny [Plaintiff] benefits is not entitled to deference.").

According to the Eighth Circuit, under the 2002 regulations, de novo review is appropriate only when an administrator "wholly fails 'to act on appeal' and that failure 'raises serious doubts about the result reached by the plan administrator' in its initial denial." *McIntyre v. Reliance Standard Life Ins. Co.*, 972 F.3d 955, 965 (8th Cir. 2020) (citing *Seman v. FMC Corp. Retirement Plan for Hourly Emps.*, 334 F.3d 728, 733 (8th Cir. 2003)). An "administrator's delay in deciding an appeal is not a trigger for de novo review." *Id.* "It is, rather, *a factor to be considered* by the district court when reviewing the administrator's decision for an *abuse of discretion*." *McIntyre*, 972 F.3d at 965 (citing *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1998) (emphasis added).

**B. Current ERISA regulations require strict adherence to ERISA's provisions for processing disability claims, with very limited exceptions.**

In 2016, ERISA regulations were amended to significantly heighten the compliance standards for disability plans specifically. A new subsection (i) was added under the 2002-added subsection (l), "requiring plans to ***strictly adhere to all the requirements*** of this section with respect to a claim." 29 C.F.R. § 2560.503-1(l)(2)(i) (emphasis added); *see also Frederick v. Life Ins. Co. of N. Am.*, 2025 WL 71864, at *4 (E.D. Mo. Jan. 10, 2025) ("One requirement that a plan must strictly adhere to is the time frame that section 2560.503-1(i) delineates for a plan to decide an appeal."). If a plan fails to strictly adhere to all the requirements and a claimant decides to sue, the new subsection further explains, "the claim or appeal is deemed denied on review ***without the exercise of discretion*** by an appropriate fiduciary." *Id.* (emphasis added). In other words, under the 2016 amendments, a plan's failure to strictly adhere to all of the requirements with respect to a claim leads to a de novo standard of review, with one narrowly-drawn exception:

> "The administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on **de minimis violations** that **do not cause, and are not likely to cause, prejudice or harm to the claimant** so long as **the plan demonstrates that the violation was for good cause** or **due to matters beyond the control of the plan** and that the violation **occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant**. This exception is **not available if the violation is part of a pattern or practice of violations by the plan**.

29 C.F.R. § 2560.503-1(l)(2)(ii). All five of the subsections requirements must be met in order for a defendant to rely on the exception. *See Brewer v. Unum Grp. Corp.*, 622 F. Supp. 3d 1113, 1129 (N.D. Ala. 2022) ("This subsection is written in the conjunctive so, to save [Defendant] from forfeiting discretion, five things must be true."). Subsection (ii) also sets out specific procedures for when a claimant requests information about the violation and what happens when a court determines that a violation was de minimis. Specifically:

> The claimant may request a written explanation of the violation from the plan, and the plan must provide such explanation within 10 days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted. If a court rejects the claimant's request for immediate review under paragraph (l)(2)(i) of this section on the basis that the plan met the standards for the [de minimis] exception under this paragraph (l)(2)(ii), the claim shall be considered as re-filed on appeal upon the plan's receipt of the decision of the court. Within a reasonable time after the receipt of the decision, the plan shall provide the claimant with notice of the resubmission.

29 C.F.R. § 2560.503-1(l)(2)(ii). When a claimant seeks immediate de novo review under (l)(2)(i) following a failure to "strictly adhere to all the requirements of this section," a court first decides whether a failure meets all five criteria for the de minimis exception; if it does, "the claim shall be considered as re-filed on appeal upon the plan's receipt of the decision of the court." *Id.* In other words, a court's only choices when faced with an alleged failure to "strictly adhere" to ERISA's disability claims processing requirements is to either (1) decide that the failure is de minimis, or (2) review the claim de novo. *See Cogdell*, 169 F.4th at 248 (for claims filed after April 1, 2018, plan administrators must strictly adhere to deadlines; otherwise, unless the violation was de minimis, the claimant gets de novo review).

**C. Given the new regulations, *McIntyre* is inapposite.**

Defendant urges that *McIntyre* governs here, but McIntyre's claim was filed years before the latest regulations took effect. *See McIntyre*, 972 F.3d at 964 n.4. The Eighth Circuit has not yet interpreted the new regulations. But for claims filed after April 1, 2018, the regulatory text clearly requires a plan to "strictly adhere" to claims procedures; otherwise, a claimant is "entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l)(2)(i); *id.* § 2560.503-1(p)(3); *see also Cortez v. Gen. Mills,*

*Inc.*, 2023 WL 7489998, at *5 (D. Minn. Nov. 13, 2023) (collecting cases holding that the strict compliance standard applies for disability benefits claims filed after April 1, 2018).

**D. Defendant's decision was outside the bounds of its discretion.**

***1. Denial after deadline was not within the bounds of Defendant's discretion.***

"Decisions made outside the boundaries of conferred discretion are not exercises of discretion." *Cogdell*, 169 F.4th at 254–55 (quoting *Jebian*, 349 F.3d at 1104). Both ERISA regulations and the Plan required Defendant to decide Plaintiff's appeal within 45 days. 29 C.F.R. § 2560.503-1(i)(1)(i); Doc. [29] at 97. Defendant's failure to issue a decision within 45 days of Plaintiff's August 30, 2023, appeal "meant it failed to exercise its fiduciary discretion." *Cogdell*, 169 F.4th at 255. "A late decision, absent unusual circumstances not present here, is not entitled to deference because [the claims administrator] lacks the authority to take longer than the regulations and the Plan permit." *Id.* (citing *Fessenden*, 927 F.3d at 1004).

The administrative record documents Defendant's August 30, 2023, receipt of Plaintiff's appeal letter by fax to the correct number. Doc. [30] at 65; Doc. [54-1] ¶ 49. It is uncontested that Defendant did not respond to that appeal within 45 days of August 30, 2023. *See* Doc. [54-1] ¶¶ 51-52. In light of the timely fax, Defendant's arguments about the mailing address are beside the point. Plaintiff satisfied Defendant's appeal requirements by at least one method. Defendant's benefits denial letter instructed Plaintiff to include her "printed or typed full name, Policyholder, and at least the last four digits of your Social Security Number," which she did. *Id.*; Doc. [29] at 291. Defendant even confirmed receipt of Plaintiff's August 30th faxed appeal letter multiple times before claiming that it did not receive the letter until November. *See* Doc. [29] at 283 ("We apologies [sic] regarding the delay of handling Ms. Farley's appeal which was received on 8/30/2023."); *id.* at 281 ("As previously noted, we apologize regarding the delay of handling Ms. Farley's appeal which was received on 8/30/2023 and will make a decision as soon as possible."). Because Defendant did not establish or follow claims procedures consistent with ERISA, it did not deny Plaintiff's claim within the bounds of its conferred discretion. A denial made without proper discretion is reviewed de novo. *See Cogdell*, 169 F.4th at 254–55 (quoting *Jebian*, 349 F.3d at 1104).

***2. Defendant's violation does not qualify as de minimis.***

Having determined that Defendant failed to "strictly adhere" to claims procedures, the Court next decides if the failure qualifies for the de minimis exception per 29 C.F.R. § 2560.503-

1(l)(2)(ii). In order to qualify, the violation must not just (1) be "de minimis," but also must (2) not harm the claimant, (3) be for good cause or matters beyond the plan's control, (4) occur in the context of a good faith exchange of information between the plan and the claimant, and (5) not be part of a pattern or practice of violations by the plan. 29 C.F.R. § 2560.503-1(l)(2)(ii)*; see also Brewer*, 622 F. Supp. 3d at 1129; *Vartanian v. First Reliance Standard Life Ins. Co.*, 2025 WL 2555712, at *12 (D.N.J. Sept. 5, 2025).

Assuming arguendo that Defendant's untimeliness is "de minimis" for purposes of the first prong, Defendant fails to satisfy the remaining prongs. Plaintiff was likely prejudiced by the additional time spent waiting for her LTD benefit determination, and Defendant has not established any good cause for missing the deadline. Defendant's attempts to blame Plaintiff for its own mistake cut against a finding of good cause. The record suggests that Plaintiff sent her August 30, 2023, appeal letter to the correct fax number, but Defendant, once it had the letter, failed to take appropriate steps to process the appeal, a failure that was fully within its control. Doc. [54-1] ¶ 49; Doc. [30] at 65. Because Defendant's late determination does not qualify as a de minimis ERISA violation, the Court reviews Defendant's decision de novo.

## II. <u>Under a de novo standard of review, Defendant's denial of benefits was contrary to the Plan and ERISA.</u>

Defendant's denial of benefits contravenes the Plan and ERISA because the identified occupations require retraining and exceed Plaintiff's physical limitations.

### A. A de novo review focuses on the language in the plan documents.

Under a de novo standard of review, the Court makes an independent decision about benefits, and its review is performed "without giving any deference to the administrator's decision." *Davidson v. Prudential Ins. Co.*, 953 F.2d 1093, 1095 (8th Cir. 1992). Both plan interpretation and fact-based determinations made by the plan administrator are subject to de novo review. *See Riedl v. Gen. Am. Life Ins. Co.*, 248 F.3d 753, 756 (8th Cir. 2001). The Court does not consider whether "some evidence" or "substantial evidence" supported the administrator's decision, but rather "'whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's independent review.'" *Michael v. Am. Int'l Grp., Inc.*, 2008 WL 4279582, at * 17 (E.D. Mo. Sept. 15, 2008) (quoting *Niles v. Am. Airlines, Inc.*, 269 Fed. App'x 827, 832 (10th Cir. 2008)).

When reviewing an ERISA plan de novo, the Court begins by examining the language of the plan documents. *See Bond v. Cerner Corp.*, 309 F.3d 1064, 1067 (8th Cir.2002). In doing so, the Court must "interpret the terms of the plan by 'giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean.'" *Adams v. Continental Cas. Co.*, 364 F.3d 952, 954 (8th Cir. 2004) (quoting *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 789–90 (8th Cir. 2002) (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996))). Each provision should be read consistently with the others and as part of an integrated whole. *Bond v. Cerner Corp.*, 309 F.3d 1064, 1067–68 (8th Cir. 2002) (quoting *DeGeare v. Alpha Portland Indus.*, 837 F.2d 812, 816 (8th Cir.1988)). The Court can consider only the evidence that was before the administrator when the claim was denied. *See DaPron v. Spire, Inc. Ret. Plans Comm.*, 377 F. Supp. 3d 946, 949 (E.D. Mo. 2019), *aff'd sub nom. DaPron v. Spire Missouri, Inc.*, 963 F.3d 836 (8th Cir. 2020) (quoting *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) ("Such additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.").

Here, Plaintiff's claim is deemed denied on October 14, 2023, the date the Administrative Record closed. Thus, the Court considers the denial that Plaintiff was appealing in her August 30, 2023, appeal letter. Defendant's December 6, 2023, denial letter and its accompanying employability analysis are not properly before the Court.

**B. Defendant's identified occupations all require significant retraining, in violation of the Plan.**

"ERISA requires all plan fiduciaries—a term that includes plan administrators—to discharge their duties in accordance with the plan documents." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 681 (8th Cir. 2005) (citing 29 U.S.C. § 1104(a)(1)(D)). The Policy at issue here defines "Any Occupation" as: "any occupation ***for which You are qualified by education, training or experience***, and that has an earnings potential greater than the lesser of: . . . 1) the product of Your Indexed Pre-disability Earnings and the Initial Benefit Period Percentage; or 2) the Maximum Monthly Benefit." Doc. [47-2] ¶ 6; Doc. [29] at 50-51 (emphasis added). Defendant's denial of LTD benefits rests upon an employability analysis conducted by Ms. Crovo. Ms. Crovo's employability analysis "identified 0 occupations within the 'closest' level, 0

occupations within the 'good' level, 4 occupations within the 'fair' level." Doc. [30] at 101. The employability analysis lists the four occupations it determines Plaintiff can do, noting that Plaintiff "possesses the capabilities to perform these occupations with minimum training in tools and /or materials." *Id.*

In *Gully*, a district court within the Eighth Circuit reversed a denial of LTD benefits under similar circumstances but with a higher standard of review, the abuse of discretion standard. *Gully v. Aetna Life Ins. Co.*, 997 F.Supp.2d 955, 961-63 (W.D. Ark. 2014). Similar to here, dueling vocational reports were the principal evidence. *See id*. at 961. In *Gully*, unlike here, the policy at issue allowed the insurer to consider retraining under the "any occupation" standard. *Id.* at 957 (defining "reasonable occupation as "any gainful activity for which you are; or ***may reasonably become; fitted by: education; training***; or experience; and which results in; or can be expected to result in; an income of more than 60% of your adjusted pre-disability earnings.") (emphasis added). The insurer in *Gully* determined that Gully could perform a number of occupations and was therefore not disabled, noting that for those occupations, "[s]hort-term on-the-job training may be appropriate" and "[c]omputer skills are very important," without addressing the fact that Gully had no knowledge of computers. *Id.* at 958. The district court reversed the insurer's determination, explaining that "[t]he problem with Aetna's position is that it improperly assumes any necessary training will be 'minimal,' even though Ms. Hope's report fails to specifically acknowledge Gully's lack of computer skills or assess the level of training that would be required. In light of these improper assumptions, Aetna's interpretation of terms is inconsistent." *Id.* at 963.

Similarly, Defendant's determination here relies on Ms. Crovo's conclusion that Plaintiff can perform four listed occupations with "minimum training." Doc. [30] at 101. There are two problems with that determination. First, the Plan does not impose a retraining requirement. The Plan defines "Any Occupation" as "any occupation **for which You are qualified by education, training or experience**" that meets the earnings requirement. *See* Doc. [29] at 50. The Plan doesn't require that an individual undergo retraining to become eligible for more occupations. Second, even if the Plan had such a requirement, Defendant does not explain the extent of training required for Plaintiff to obtain employment under the "Any Occupation" standard. *See* Doc. [30] at 101 (referencing only "minimum" training). As in *Gully*, Ms. Crovo's report does not address the level of training that would be required, Plaintiff's current skill deficits, and what

skills she would need to build to become eligible for the listed occupations. 997 F. Supp. 2d at 963; Doc. [30] at 101. In *Gully*, that determination was insufficient under the abuse of discretion standard; it is likewise insufficient on de novo review. *Id.* Defendant's determination is contrary to the Plan's clear language and therefore contrary to ERISA. *See Torres*, 405 F.3d at 681 (citing 29 U.S.C. § 1104(a)(1)(D)).

**C. Defendant's determination that Plaintiff can perform sedentary work ignores the findings of its own reviewing doctor.**

"A plan administrator abuses its discretion when it ignores relevant evidence." *Willcox v. Liberty Life Assur. Co. of Boston,* 552 F.3d 693, 701 (8th Cir. 2009). Ms. Crovo's vocational report, which Defendant relied upon to deny Plaintiff LTD benefits, used the Dictionary of Occupational Titles (DOT) to analyze Plaintiff's employability. Doc. [30] at 99. Ms. Crovo opined, and Defendant agreed, that Plaintiff could perform Sedentary Work. *Id.* According to the DOT, Sedentary Work "may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only ***occasionally*** and all other sedentary criteria are met." Doc. [47-1] at 13-14 (emphasis added); Doc. [30] at 99-100. Under the DOT, "occasionally" is defined as "up to one third of an eight-hour day, or between two and three hours per day." *See Owens v. Colvin*, 727 F.3d 850, 851-52 (8th Cir. 2013); 20 C.F.R. § 404.1567 ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") (social security context); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 695 n.11 (7th Cir. 1992) (While social security cases are not directly applicable to ERISA, "the guiding principles developed in Social Security disability cases may be instructive in ERISA cases."). But according to Dr. Fadul, Defendant's own reviewing doctor, Plaintiff can stand and walk for only up to one hour per day in intervals of 20 minutes at a time.[3] Doc. [29] at

[3] Dr. Fadul's report stated that Plaintiff could stand and walk as follows:

```
Standing: Occasionally, 20 minutes at a time, for up to 1 hours per day
Walking: Occasionally, 20 minutes at a time, for up to 1 hours per day
```

*See* Doc. [29-1] at 150. Plaintiff maintains that this assessment means that Plaintiff can remain on her feet for no more than one hour total during an eight-hour workday. *See* Doc. [54-1] ¶ 63. Defendant, meanwhile, asserts that Dr. Fadul meant that Plaintiff can both stand for one hour and walk for one hour during an eight-hour period, for a total of two hours. *Id*. Because this is a question of fact, and the Court is analyzing Plaintiff's motion for summary judgment and may not make determinations regarding disputed facts or weigh the evidence, it will adopt non-movant Defendant's interpretation for purposes of this Order. *See Avenoso v. Reliance Standard Life Ins. Co*., 19 F.4th 1020, 1024-25 (8th Cir. 2021).

275-76. Taking a generous reading of Dr. Fadul's report, as urged by Defendant, and thus concluding that Dr. Fadul meant that Plaintiff is capable of standing for up to one hour and *also* walking for up to one hour, Plaintiff can stand and walk for a total of two hours per day. That is less than the approximately two hours and forty minutes (i.e., one third of eight hours) of standing and walking that could be required under DOT standards. If Plaintiff cannot meet the exertional requirements for sedentary work, she cannot meet the exertional requirements for any other work either. Doc. [29] at 275-76.

Plaintiff is limited to two total hours per day of standing and walking according to Dr. Fadul's report, Doc. [29] at 275-76 (again, interpreted in Defendant's favor), yet one third of an eight-hour workday is approximately two hours and forty minutes. Accordingly, Plaintiff cannot stand and walk for the amount of time required for sedentary jobs as defined by the DOT. Doc. [47-1] at 13-14; Doc. [29] at 275-76. Defendant's employability analysis thus contravenes its own proffered physical limitations for Plaintiff, and its denial upon that basis violates ERISA.

Defendant's argument to the contrary is unavailing. To support its argument that sedentary jobs under the DOT require only a maximum of two hours of standing or walking during a workday, Defendant quotes a footnote in a 2004 opinion out of the District of Minnesota that was reversed by the Eighth Circuit on appeal on another ground. *See Pralutsky v. Metro. Life Ins. Co.*, 316 F. Supp. 2d 840, 853 n.9 (D. Minn. 2004), *rev'd*, 435 F.3d 833 (8th Cir. 2006). The Eighth Circuit reversed for lack of evidence of disability provided by the plaintiff, without mentioning the hours of standing or walking required per day for a sedentary occupation. *Id.* Defendant also cites a 2001 opinion from the Second Circuit. *See Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 n.5 (2d Cir. 2001) ("sedentary work 'generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day.'") (citing *Curry v. Apfel,* 209 F.3d 117, 123–24 (2d Cir. 2000), *superseded by statute on other grounds as recognized in Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013)).

Even if the Court were bound to follow the Second Circuit, its more recent opinions explain that "'[o]ccasionally' is defined in the Medical–Vocational Rules as anywhere from 'very little to up to one-third of the time.'" *Selian*, 708 F.3d at 421 (internal citation omitted). By that accounting, "occasional" standing and walking over an eight-hour workday could be up to two-and-two-thirds hours; it would not be capped at two hours as urged by Defendant And the Eighth Circuit, which this Court *is* bound to follow, stated in 2013 that, under the DOT,

"occasional" performance of a physical task means "up to one-third of the time." *Owens*, 727 F.3d at 852. A claimant who cannot meet the physical requirements of identified occupational opportunities must qualify as disabled under the Plan. The crucial question to determine disability under the "Any Occupation" standard is whether the claimant can work in any occupation. The Court will reverse and remand for further consideration pursuant to this Order. If Defendant cannot identify any occupation that Plaintiff may perform, Plaintiff is entitled to disability benefits under the Plan.[4]

## CONCLUSION

Having determined, on de novo review, that Defendant's final determination was erroneous, the Court finds that Plaintiff is entitled to summary judgment in this matter. The Court will remand Plaintiff's claim to Hartford Life and Accident Insurance Company for a renewed, full, and fair review consistent with this Order.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [47], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings, Doc. [48], is **DENIED** as moot.

**IT IS FINALLY ORDERED** that Hartford Life and Accident Insurance Company's denial of benefits is **VACATED** and the matter **REMANDED** to Defendant for further proceedings consistent with this Order.

An Order of Judgment will accompany this Memorandum and Order.

Dated this 30th day of September, 2026.

Sarah E. Pitlyk

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

[4] Plaintiff raises several purported reversible errors associated with Defendant's denial of benefits, but the Court finds it unnecessary to address Plaintiff's additional alleged errors in light of its determination to reverse and remand due to the above discussed issues.